# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

HECTOR FAVA and BARBARA FAVA,

    Plaintiffs,

    v.                                    No. 17cv00456 WJ/LF

LIBERTY MUTUAL INSURANCE
CORPORATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO STRIKE OR DISALLOW
## CERTAIN OPINIONS OF PLAINTIFFS' EXPERTS
## ROBERT GORDON MCKEEN AND DAVID DISKO

THIS MATTER comes before the Court upon Defendant's Motion to Strike or Disallow Certain Opinions of Plaintiffs' Experts Robert Gordon McKeen and David Disko, filed June 1, 2018 **(Doc. 67)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is DENIED.

## BACKGROUND

This lawsuit against Liberty Mutual arises out of Plaintiffs' claims for damages under a Homeowners Policy ("Policy") issued by Liberty Mutual ("Liberty") to Mr. Fava. Mr. and Mrs. Fava ("Plaintiffs" or "Favas") allege property damages to their home stemming from a water leak under their home. Plaintiffs filed the Complaint on July 29, 2016 in the Second Judicial District, County of Bernalillo, and Defendants removed the case to federal court under diversity jurisdiction on April 17, 2017. The Complaint asserts four claims for relief against Defendant:

    Count I: Breach of Contract and the Covenant of Good Faith and Fair Dealing;
    Count II: Violation of Unfair Practices Act;

Count III: Violation of New Mexico Insurance Code; and
Count IV: Negligence.

According to the Complaint, on August 18, 2015, a pipe in the crawlspace underneath Plaintiffs' home burst, flooding the home's crawlspace with several inches of standing water. Plaintiffs took action to stop the leak and report the incident to Plaintiffs' insurer, Liberty. The water from the burst pipe caused the floor in Plaintiffs' kitchen and living room to begin sloping downward and large cracks to form in several load-bearing walls in the home. The Favas reported the damage to Liberty. Plaintiffs assert that Liberty repeatedly denied coverage of Plaintiffs' claim based on inadequate investigations of the cause of the damage to the home as well as its misrepresentations about those investigations. Since August 2015, Plaintiffs' home has had a 10' diameter hole in the living room, made when Liberty performed its inspection of the damage to Plaintiffs' home. As a result of Liberty's improper denial of coverage and mishandling of Plaintiffs' claim, Plaintiffs' home continues to deteriorate and Plaintiffs have been unable to use a significant portion of their home since that time.

Defendant denies Plaintiffs' contentions. Following the reported water loss, Liberty retained independent adjusters to inspect the water loss and also retained an engineer to inspect the water loss and report the findings. Based on those findings and the damages associated with the water leak, Defendant paid what was owed under the policy.

**DISCUSSION**

In this motion, Liberty contends that the Court should strike or disallow certain testimony from Gordon McKeen ("McKeen") and David Disko ("Disko") because they are based on the opinions of professional engineer John Giersch ("Giersch"). Plaintiffs hired Giersch, a Registered Professional Engineer for JPG Engineering, LLC ("JPG Engineering") in November 2015, several months after the August 2015 leak event, to create a repair plan to remediate

2

conditions at their residence. Plaintiffs have identified Giersch who is a professional engineer as a fact witness but not as an expert.

McKeen is a licensed engineer in Albuquerque whose testimony is being offered by Plaintiffs to testify regarding: (1) the cause and origin of the damage to the Favas' home, and (2) the most appropriate engineering plan to repair that damage. Disko is a licensed contractor in Albuquerque who is offered by the Favas to testify about the cost of implementing the engineering repair plan. Plaintiffs have timely disclosed expert reports for McKeen and Disko.

Liberty denied Plaintiffs' claims for property damage on three separate occasions. After the first denial in September 2015 and in response to Mr. Fava's protest that Liberty had not performed any investigation on the claim, the insurer hired Rimkus Consulting Group, Inc. to perform an inspection of the damage to the structure of the Fava residence. Two days after Rimkus issued a report, on October 3, 2015, Liberty again denied Plaintiffs' claim. The third letter of denial, which was dated March 21, 2016, gave different reasons ("settling" and "seepage exclusion") for rejecting coverage. *See* Docs. 76-2; 76-3.

Not surprisingly, McKeen's reports directly challenge the adequacy and integrity of the Rimkus reports. A big part of the dispute centers on whether damage to the house was caused by water coming into crawlspace from outside the house over a long period of time *prior* to the water leak or whether the damage was caused by the acute event of a burst water line which caused water to flood the crawlspace area. *See* Doc. 67-3 at 6. Defendant seeks to exclude those portions of McKeen's and Disko's testimony and opinions that rely on Giersch's plan because admission of such testimony contravenes Rules 701 through 704 of the Federal Rules of Civil Procedure.

3

Defendant initially argues that Giersch's opinions constitute expert opinions under Rule 702, and as such should have been disclosed under Fed.R.Civ.P.26(a)(2); and further, that failure to disclose McKeen and Disko as experts warrants sanctions under Rule 37(c). Under Rule 37 of the Federal Rules of Civil Procedure, a federal district court has discretion to preclude the use of information at trial any witness or information that a party failed to timely disclose under Rule 26(a). Fed.R.Civ.P.37(c)(1); *Farris v. Intel Corp.*, 493 F. Supp. 2d 1174, 1178 (D.N.M. 2007) ("The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court") (citing *Woodworkers Supply, Inc. v. Principal Mut. Life. Ins. Co.,* 170 F.3d 985, 993 (10th Cir.1999) (citation omitted). A court should consider the following factors in order to determine whether Rule 37 sanctions are warranted:

> (1) any prejudice or surprise to the party against whom the testimony is offered;
> (2) the ability of the party to cure any prejudice;
> (3) the extent to which introducing the testimony would disrupt the trial; and
> (4) the violator's bad faith or willfulness.

*Woodworkers Supply, Inc.,* 170 F.3d at 993; *Farris v. Intel Corp.,* 493 F.Supp. at 1178.

Plaintiffs do not intend to use Giersch either as a fact or expert witness in this litigation. They hired Giersch in November 2015 (which would be, chronologically, following Liberty's second denial of their claim) to prepare a repair plan even before this lawsuit was filed on July 29, 2016. Based on these representations, Plaintiffs were not required to identify Giersch as an expert, even assuming his testimony qualified as expert opinion under Rule 702, and so Rule 37 sanctions are not warranted on that basis. Nevertheless, there remains the question of whether Plaintiffs *should have* identified Giersch as an expert if, as Defendant maintains, Plaintiffs seek to admit the testimony and opinions of McKeen and Disko as mere reiterations of Giersch's opinions.

**I.      Rule 703**

Defendant contends that Giersch's repair plan, elevation survey and construction drawings are expert opinions and that as such, they cannot be considered lay opinion under Rule 702 because they are based on his professional engineering experience. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011) (factors determining whether testimony meets the requirements of Fed.R.Civ.P. 701); *United States v. Yeley*-Davis, 632 F.3d 673, 684 (10th Cir. 2011) (if knowledge is "derived from previous professional experience, "it falls squarely within the scope of Rule 702"). Plaintiffs do not directly address whether Giersch's opinion constitutes expert testimony under Rule 702. Instead, they focus on the admissibility of the opinions and testimony of McKeen and Disko under Rule 703—which the Court agrees is the relevant inquiry here. The nature of Giersch's opinion testimony (whether it should be considered lay or expert testimony) would be relevant had Plaintiffs intended to use Giersch as a witness in this lawsuit, but Plaintiffs have made it clear they will not do so. Rule 703 does not state that the basis for an expert's opinion must come from another expert; rather, it must come from facts or data "that the expert has been made aware of or personally observed." *See United States v. Brownlee*, 744 F.3d 479, 481–82 (7th Cir. 2014) (an expert witness is permitted to rely on any evidence, whether it would be admissible or inadmissible if offered by a lay witness, that experts in the witness's area of expertise customarily) (emphasis added). What is before the Court here is the admissibility of the testimony and opinions of those individuals whom Plaintiffs have in fact identified as experts.

Fed.R.Evid. 703 states that:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may

disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed.R.Evid. 703. Defendant argues that Rule 703 does not allow Giersch's opinions to come through McKeen or Disko since those opinions are not facts or data; and even if the evidence could be considered facts or data, it would not be admissible through McKeen or Disko without analysis, testing, scrutiny or investigation by them.

Defendant contends that McKeen's reports are nothing more than a reiteration of Giersch's repair plan and measurements:

- McKeen's 2016 report mentioned that an "investigation to develop a repair plan was done by John P. Giersch" in which measurements indicated the south wall of the house was the high point. Ex. G (May 14, 2016 Rep't at 3).[1]

- McKeen's later reports opined that the proposal Giersch prepared "is the most appropriate and best option to repair the damages caused by the water leak." Ex. H (Aug. 18 2017 Rep't at 2; Ex. I at 3.

- McKeen testified that he reviewed the Giersch repair plan and "fully concur[s] with his recommended repair." Ex. J, 160:1-2 and 184:20-185:3.

- McKeen's second and third reports opine that his "consultation," "review of recommendations" and his "experience with similar reports" makes it his opinion that Giersch's remediation plan "is the most appropriate and best option to repair the damages caused by the water leak." Ex. H at 2; Ex. I.

- McKeen was provided the 4-page set of construction drawings that constitute Giersch's "Foundation Repairs" but was never provided any documentation of Giersch's elevations before he formed his opinions;

- Information about survey results was shared in a phone call with Giersch. Ex. J, 101:20-102:1, 180:9-181:1, 182:1-8 and 200:12-17. McKeen spot checked the elevations that Giersch measured. Id., 56:8-13.

- McKeen returned to the Favas' residence in August 2017, before writing his second report endorsing Giersch's repair plan. Ex. J, 162:3-13 and 186-15:20 that time and visual

---

[1] The parties submitted separate binders containing exhibits that are relevant to all pending motions in the case. In these binders, Plaintiffs' exhibits are numbered; Defendant's exhibits are lettered. In addition, specific exhibits are attached to each of the pending motions, and will be referred to by the document number. Thus, an exhibit may be referred to either by its number or letter, or by its document number, for example, Doc. 67-4 is the same as Deft's Ex. H. However, the Court will omit references to exhibits unless necessary.

- observation, but no measurement, of cracks to see if they had progressed in width or length. *Id.,* 186:15-20.

- When McKeen returned to the house in March 2018 he again just visually observed the cracks. Ex. J, 187:8-15. The only other thing he did was "some spot measurements of elevations." *Id.,* 187:16-19.

Defendant also argues that Disko expresses no real opinions of this own, and that his opinion regarding repair costs for the Favas' home is a wholesale adoption of Giersch's technical findings and conclusions. The "background" section of the Disko report was obtained from one of McKeen's reports, and the remainder was based on Giersch's repair plan. Ex. K. Defendant contends that Disko's plan simply estimates the cost of implementing Giersch's plan without any assessment of the appropriateness of the plan, for example:

- Disko's estimate was "to rebuild [Plaintiffs' home] in such a way so that existing finishes are the – the finishes would be commensurate with what they were, what – based upon what I see; that lines are plumb and level and these sort of things that one expects in a home." Ex. L, 17:25-18:2 and 18:12-18.

- The structural part of Disko's opinion is based on the Giersch plan, the JPG Engineering [f]inishes are based upon what [was] witnessed there, trying to match things as nearly as one can." Ex. L at 21:9-13; 73:4-18 (testifying that the structural and construction aspects of Disko's estimates are based primarily upon the Giersch plan).

Defendant claims that portions of the McKeen and Disko reports which rely on Giersch's undisclosed expert opinions should be stricken because Rule 703 does not allow Giersch's opinions to come through McKeen or Disko because neither McKeen nor Disko conducted any independent analysis or evaluation. Defendant is correct that an expert "may not merely parrot the opinions of other experts whose conclusions are not themselves in the record." *Stephenson v. Honeywell Int'l, Inc.*, 703 F. Supp. 2d 1250, 1255 (D. Kan. 2010) (citing *Beck's Office Furniture and Supplies, Inc. v. Haworth, Inc.,* 1996 WL 466673, *7 (10th Cir. Aug. 16, 1996) and *TK–7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732–33 (10th Cir.1993); *see, e.g., United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014) (an expert cannot merely parrot out of court

7

statements otherwise he is merely a "ventriloquist's dummy."); *Factory Mut. Ins. Co. v. Alon USA L.P.*, 7-5 F.3d 518, 524 (5th Cir. 2013) (Rule 703 was never intended to "allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.").

On the other hand (and as Plaintiffs point out), an expert can rely on other opinions, even those formed by non-testifying experts, so long as there is no challenge to the qualifications of a testifying expert. *Stephenson v. Honeywell Int'l, Inc.*, 703 F.Supp.2d 1250, 1255 (D.Kan. 2010). Experts may rely on the opinions of others if experts in that field would rely on such opinions. *Id.* (quoting *Beck,* 1996 WL 4666673).[2] Defendant has not contested the qualifications of either McKeen or Disko and so these two individuals may rely on information that they have become aware of or personally observed under Rule 703.

Under Rule 703, an expert may rely on data presented to the expert outside of court and other than by his own perception. The objective behind the rule is simple: it is designed "to broaden the basis for expert opinions . . ." and bring this practice "into line with the practice of the experts themselves when not in court." Fed. R. Evid. 703 (Adv. Comm. Notes, 1972 Prop. Rules). Put another way, it avoids needless duplication. The rule's commentary note provides the example of a physician who in his own practice bases a diagnoses on information from numerous sources including "statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays." *Id.* The physician's own validation of the presented information, "expertly performed and subject to cross-examination, ought to suffice for judicial purposes." *Id.*

---

[2] Defendant claims that Plaintiffs may not rely on *Stephenson* because in that case the expert relied on work which was done within his control by his assistant. However, there is nothing in the court's analysis to suggest that its holding is limited to the specific facts of the case.

Plaintiffs acknowledge that both McKeen and Disko relied on Giersch's elevation survey results and repair plan when forming their own opinions. Defendant claims that McKeen and Disko's opinions are inadmissible because neither conducted "independent evaluations" of Giersch's work, *see* Doc. 89 at 2, but Rule 703 has no such requirement. The only question here is whether McKeen and Disko parroted Giersch's expert opinions (as Defendant claims) *or* whether they sufficiently subjected Giersch's findings, measurements, opinions and conclusions to their own validation processes in order for their opinions to come within the purview of Rule703. In addition, both McKeen and Disko were subject to cross-examination by defense counsel in their depositions which revealed the following regarding their evaluations of Giersch's measurements and repair plan:

- McKeen had a conversation with Giersch when McKeen prepared the August 18, 2018, report. Ex. 15 at 24:15-25:2. Giersch prepared an elevation survey on the property and communicated these results to McKeen, who took notes. Ex. 15 at 40:11-20; 56:7-13.

- McKeen relied on the elevation measurements that Giersch relayed to him verbally, but he also made his own elevation measurements of the property in order to verify the measurements made by Giersch. Ex. 15 Id. at 101:24-102:1; 41:4-7; 56:7-58:19.

- In addition to consulting with Giersch, McKeen visited the Favas' home three times, taking photographs, measurements, and notes each time. These photographs, measurements, and notes verified the data McKeen obtained from Giersch.

- Disko based his repair estimates primarily on the structural portion of Giersch's report, but made his own calculations regarding the necessary finishes, explaining that Giersch was a structural engineer not concerned with cosmetic issues. Ex. L at 73:9-20.

- While Disko's calculations were based on the JPG drawings (from Giersch's report), he validated Giersch's findings with his own observations and calculations. *See e.g.,* Ex. L at 40:11-14 (noting that the Giersch plan indicates the floors should be removed and replaced "[b]ecause the floor is unlevel, because the foundation system moved"); *id.* at 45: 2-8 (calculations regarding board footage for entry columns); *Id.* at 57:5-16 (explaining basis for the JPG measurements of floor joists); *see also id.* at 76:6-11 (Disko explaining why his estimate includes removal of the girders as recommended in McKeen report).

- Disko's observations played a role in forming his report. *See, e.g.,* Ex. L at 40:22-25 (stating that he did not see "a lot of rot" under the floor but noting that he "was looking through a hole underneath the house.").

Both McKeen and Disko relied on Giersch's findings in formulating their own reports, but this is precisely the type of reliance that is permissible under Rule 703 because both individuals also used their own knowledge, skills and training to critically evaluate Giersch's measurements and repair plan.

Defendant contends that the information in the Giersch report is not the kind that experts in similar fields would reasonably rely on, but Defendant offers no support for this bald assertion, nor does it make any sense. The evidence an expert relies on has to provide an adequate foundation for that expert's opinion. *U.S. v. Brownless,* 744 F.3d 479, 481-82 (7th Cir. 2014) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)). Also, the information must be of a type reasonably relied upon by others in the witness' field of expertise. *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 733 (10th Cir. 1993) (cited case omitted). It would seem to be common practice for an engineer like McKeen to rely on the measurements and opinions of other engineers in the practice of their professions. Likewise, Disko is a contractor and would not be qualified to testify about the cause of the damage to the Favas' home, nor is he offered to provide an opinion regarding the engineering plan required to repair the home. Therefore, it is reasonable that he would rely on engineering plans (such as Giersch's plan) on which to build his opinion about the cost for home repairs. Moreover, both Plaintiffs' and Defendant's engineering experts in this case testified that they rely on the work of other engineers as a regular course of their work. *See* Ex. 15 (McKeen Depo.) at 18:3-15; Ex. 16

(Chavez Depo.) at 16:5-17; Ex. 15 at 25:3-5 (McKeen testifying that he has worked with Giersch in the past on other projects). [3]

Therefore, the Court finds it reasonable for McKeen and Disko to have relied on Giersch's repair plan, elevation survey and construction drawings, and that both conducted sufficiently independent evaluations of the facts and data on which they relied for their opinions to meet Rule 703's requirements.

## II. Prejudice to Defendant

Defendant contends that Liberty would be unfairly prejudiced if McKeen or Disko were allowed to present Giersch's expert opinions to the jury because allowing one expert to simply "parrot technical findings and conclusions of a lay witness clearly can be prejudicial to an opposing party." Doc. 67 at 13.[4] The Court has already determined that the reports of McKeen and Disko are not merely reiterations of Giersch's findings, and so there can be no prejudice on that basis.

Defendant also claims that cross-examination of "weak or unsupported expert opinions" may be confusing or misleading to the jury under Fed.R.Evid. 403. However, these concerns relate to weight rather than admissibility and are properly addressed by arguments to the jury about weight or reliability of testimony. Plaintiffs offer use of the standard jury instruction regarding expert witness testimony. *See* Ex. 17 (NM UJI 13-213; Fifth Cir. Civ. §2.13). The instruction reminds the jury that they are free to give the opinion of an expert witness as much or

---

[3] Without any specific discussion, Defendant also contends that Giersch's report and findings are not "facts as data" under Rule 703. However, the Court disagrees with this contention. In light of the commentary notes for Rule 703, Giersch's repair plan, elevation survey and construction drawings may indeed be considered "facts and data" on which another engineer and a licensed contractor may rely in forming their own opinions.

[4] Plaintiffs propose that Liberty should not benefit from its decision not to depose Giersch. However, the Court agrees with Defendant that no negative inference should flow from Liberty's decision not to depose Giersch because as Plaintiffs themselves admit, they never intended to use Giersch as a witness in this case.

as little weight as they find it deserves, and the Court finds that this sufficiently addresses Defendant's concern about improper weight being given to any opinion testimony.

## CONCLUSION

In sum, the Court finds and concludes that it was reasonable for McKeen and Disko to have relied on Giersch's repair plan, elevation survey and construction drawings; that the opinions of these two experts were not merely summarizations or repetitions of Giersch's reports; that both conducted sufficiently independent evaluations of the facts and data on which they relied for their opinions to meet Rule 703's requirements; and their reports and testimony will not be stricken in any part.

The Court further finds and concludes that Defendant will not be prejudiced by allowing admission of McKeen and Disko's reports and testimony; and further, that this Court's standard jury instruction regarding the evaluation of expert testimony sufficiently addresses any concern about the weight being given to such testimony.

Defendant's Motion to Strike or Disallow Certain Opinions of Plaintiffs' Experts is DENIED.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE