# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

HECTOR FAVA and BARBARA FAVA,

      Plaintiffs,

      v.                                        No. 17cv00456 WJ/LF

LIBERTY MUTUAL INSURANCE
CORPORATION,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## ON PLAINTIFFS' BREACH OF CONTRACT CLAIMS

THIS MATTER comes before the Court upon a Motion for Summary Judgment on Plaintiffs' Breach of Contract Claims, filed by Defendant Liberty Mutual ("Defendant" or "Liberty") on June 1, 2018 (**Doc. 70**). Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

## BACKGROUND

Plaintiffs Hector and Barbara Fava are homeowners who are suing Liberty for damages under a Homeowners Policy ("Policy") issued by Liberty to Mr. Fava. Plaintiffs (or "the Favas") allege property damages to their home stemming from a water leak under their home. Plaintiffs initially filed the Complaint on July 29, 2016 in the Second Judicial District, County of Bernalillo, and Liberty removed the case to federal court under diversity jurisdiction on April 17, 2017.

According to the Complaint, on August 18, 2015, a pipe in the crawlspace underneath Plaintiffs' home burst, flooding the crawlspace with several inches of standing water. Almost immediately after the leak, Plaintiffs noticed cracks in load-bearing walls and a sloping floor.

Plaintiffs took action to stop the leak and report the incident to Plaintiffs' insurer, Liberty. The water from the burst pipe caused the floor in Plaintiffs' kitchen and living room to begin sloping downward and large cracks to form in several load-bearing walls in the home. The Favas reported the damage to Liberty. Liberty investigated and concluded that much of the structural damage pre-existed the water leak and that the water leak caused Plaintiff the structural damages and Plaintiffs disagreed with Liberty.

Plaintiffs assert that Liberty repeatedly denied coverage of Plaintiffs' claim based on inadequate investigations of the cause of the damage to the home as well as its misrepresentations about those investigations. Since August 2015, Plaintiffs' home has had a 10' diameter hole in the living room, made when Liberty performed its inspection of the damage to Plaintiffs' home. Because of Liberty's improper denial of coverage and mishandling of Plaintiffs' claim, Plaintiffs' home continues to deteriorate, and Plaintiffs have been unable to use a significant portion of their home since that time.

Defendant denies Plaintiffs' contentions. Following the reported water loss, Liberty retained independent adjusters to inspect the water loss and retained an engineer to inspect the water loss and report the findings. Based on those findings and the damages associated with the water leak, Defendant claims that it paid what was owed under the policy. The Complaint asserts four claims for relief against Defendant:

>Count I: Breach of Contract and the Covenant of Good Faith and Fair Dealing;
>Count II: Violation of Unfair Practices Act;
>Count III: Violation of New Mexico Insurance Code; and
>Count IV: Negligence.

This motion is directed solely to Count I, which is based on Liberty's contractual duties to fully and fairly evaluate Plaintiffs' claim. Liberty contends that it is entitled to summary judgment either because *either*:

(1) a fact finder will not be able to attribute the damages to Plaintiff's home from the water leak discovered on August 18, 2015, or alternatively,

(2) even if the water leak caused the structural damage to Plaintiffs' home, the undisputed material facts establish that the insurance policy does not cover these damages based on certain uncovered or excluded perils, such as wear and tear, earth movement, water damage and seepage.

## DISCUSSION

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute—as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.,* 817 F.2d 83, 85 (10th Cir. 1987).

The construction of an insurance policy is a matter of law which can be decided on summary judgment. *Adams–Arapahoe Joint School Dist. v. Continental Ins. Co.,* 891 F.2d 772, 774 (10th Cir.1989); *Quaker State Minit–Lube, Inc. v. Fireman's Fund Ins. Co.,* 868 F.Supp. 1278, 1287 (D.Utah 1994), *aff'd,* 52 F.3d 1522 (10th Cir.1995). In construing an insurance policy, the Court in a diversity case looks to the law of the forum state and, if the state Supreme Court has not addressed the issue, the Court's duty is to determine, as best it can, how the issue would be resolved by the

state Supreme Court. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995).

The facts in this case are numerous and many are disputed, but they can all be neatly categorized as belonging to one of the two grounds for which Defendant seeks summary judgment: (1) whether the burst pipe caused the structural damage to the Favas' home (the causation issue); and/or (2) and whether Liberty breached its contract with the Favas when it denied coverage, even assuming that the damage was caused by the water leak.

After reviewing all the facts presented by the parties with their accompanying exhibits, the Court concludes that material disputes of fact exist for both grounds. Both sides have retained at least one engineering expert to support their respective positions on the causation issue, namely, Gordon McKeen for Plaintiffs and Vic Chavez for Defendants. *See* Exs. 8 & 13 (McKeen reports); Ex. Y (Chavez report).[1] The Court recently denied Defendant's motion to strike Plaintiffs' experts, *see* Doc. 98, and so experts on both sides will testify at trial. These experts, not surprisingly, do not agree with each other as to whether the structural damage to the residence was caused by water coming into crawlspace from outside the house over a long period of time *prior* to the water leak (Defendant's position) or whether the damage was caused by the acute event of a burst water line which caused water to flood the crawlspace area (Plaintiffs' position). This conflict in testimony requires resolution by the jury, and not by a court on summary judgment. *See Zuchel v. Spinharney*, 890 F.2d 273, 275 (10th Cir. 1989) (generally speaking, summary judgment is not advisable in situations in which there is a conflict in expert testimony, even when the evidence leans one way); *see also* Tenth Cir. Pattern Jury Instr. §1.17, "Expert Witness." There are also disputes of material

---

[1] The parties submitted separate binders containing exhibits that are relevant to all pending motions in the case. The exhibits in Plaintiffs' binder are designated by number, while those in Defendant's binder are by letter. Exhibits may be referred to either by its number or letter, or by its document number; for example, Ex. 8 is also Doc. 76-1.

4

fact with respect to whether the structural damage to the Favas' residence should have been covered by the policy if it was caused by the water leak from the burst pipe. Thus, the question of whether Liberty's denial of coverage was a breach of their insurance contract with the Favas cannot be resolved on summary judgment.

The Court's review of the copious facts was especially taxing because of the manner in which Liberty chose to respond to many of Plaintiffs' Additional Facts, requiring a tedious search through other pleadings before finding the response. For example, in order to read Defendant's responsive statement to Plaintiffs' Additional Fact ("PAF") G ("Same as response to PAF G in Doc. 79"), one is led to the pleadings on Defendant's motion for summary judgment on Plaintiffs' bad faith claims ("Same as Plaintiffs' Additional Fact B in Doc. 77"), and then to the pleadings on Defendant's motion for summary judgment on Plaintiffs' statutory and negligence claims (Doc. 91, reply). The Court was dispatched on a similar search for Defendant's response to PAF S ("response to PAF V in Doc. 79"), which refers the reader first to summary judgment pleadings on Plaintiffs' bad faith claims ("Same as Plaintiffs' Additional Fact G in Doc. 75") and then on to the pleadings for summary judgment on Plaintiffs' emotional injury claims.

The Court found Liberty's manner of responding to Plaintiffs' facts particularly irksome because the responses failed to create material factual disputes despite the trouble it took to hunt them down. Liberty's reply brief contains many more examples of "responses" to Plaintiffs' Additional Facts that are buried within several layers of other briefs, but further examples would be pointless. Instead, the Court will present a few examples of relevant disputed facts that preclude summary judgment, starting with relevant language from the insurance policy for background and context. In setting out these facts below, the Court will omit any responses to Plaintiffs' facts that are either immaterial, irrelevant or unresponsive.

5

**I.     The Policy**[2]

Liberty issued a policy for the policy period of February 10, 2015-February 10, 2016, to Barbara Fava and Hector Fava to insure their home located in Albuquerque, New Mexico. Doc. 66-1. The policy provided in pertinent part as follows, describing losses that were excepted from coverage:

**SECTION 1 - PERILS INSURED AGAINST**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to Property. We do not insure, however, for loss:
>    . . .
>
> 2.     Caused by:
>    . . .
>    (e) Any of the following:
>
>> 1.     Wear and tear, marring, deterioration;
>> 2.     Inherent vice, latent defect, mechanical breakdown;
>> 3.     Smog, rust or other corrosion, mold, wet or dry rot;
>>    . . .
>> 6. Settling, shrinking, bulging or expansion, including resultant cracking of pavements, patios, foundations, walls, floors, roofs or ceilings;
>>    . . .
>>
>> 9. Seepage, meaning a gradual, continuous, or repeated seepage or leakage of water, steam or fuel over a period of 14 days or more, resulting in damage to the structure, whether hidden or not.[3]
>>
>> **If any of these [coverage exceptions in Section 2(e)] cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.** We do not cover loss to the system or appliance from which this water escaped.
>
> 3.     Excluded under Section 1 — Exclusions.

---

[2] Plaintiffs disputed the accuracy of certain policy provisions as set forth by Defendant. The Court sets forth the provisions here based on its review of the actual policy that was filed as an exhibit. See Doc. 66-1.

[3] The Seepage Exclusion was added to the policy as a separate endorsement. *See* Doc. 66-1 at 38. Plaintiffs claim that Defendant misquoted the seepage provision (which the Court refers to here relying on the policy language), but both parties appear to agree that this exclusion it applied to the Favas' policy during the relevant time.

> Under items 1. And 2., any ensuing loss to property described in coverages A and B not excluded or excepted in this policy is covered.

Doc. 66-1 at 11 (emphasis added). The Liberty policy also listed specific losses that were expressly excluded from coverage:

**SECTION 1 - EXCLUSIONS**
1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is. excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
   . . .
   b. Earth Movement, meaning earthquake including land shock waves or tremors before, during or after volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting unless direct loss by;
      (1) Fire;
      (2) Explosion; or
      (3) Breakage of glass or safety glazing material which is part of a building, storm door, or storm window;
      ensues and then we will pay only for the ensuing loss. This exclusion does not apply to loss by theft.

   c. Water Damage, meaning:

      (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
      (2) Water which backs up through sewers or drains or which overflows from a sump; or
      (3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

      Direct low by fire, explosion or theft resulting from water damage is covered.
   . . .

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.
   . . .
   c. Faulty, inadequate or defective:
      (1) Planning, zoning, development, surveying, siting;
      (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
      (3) Materials used in repair, construction, renovation or remodeling; or

7

> (4) Maintenance of part or all of any property whether on or off the "residence premises."

Doc. 66-1 at 12-13.

In addition to the above language regarding the earth movement provision, there is also a New Mexico endorsement which modified that provision in the policy:

**SECTION 1 - EXCLUSIONS**
The introductory language in SECTION 1 —Exclusions is deleted and replaced by the following: We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
. . .
> 2. Earth Movement is deleted and replaced by the following:
>
> 2. Earth Movement, meaning movement of the earth, whether combined with water or not, in any direction, including but not limited to:
>
>    a. Earthquake, including land shock waves or tremors before, during, or after a volcanic eruption;
>    b. Landslide, mud slide, or mud flow;
>    c. Subsidence or sinkhole; or
>    d. Any other earth movement, including earth sinking, rising, shifting, expanding, contracting, or eroding;
>    caused by or resulting from manmade, animal, or natural actions, events, or conditions.
>    If direct loss by fire or explosion ensues, we will pay only for the ensuring loss.

Doc. 66-1 at 28, Ex. A (Special Provisions-New Mexico).

Plaintiffs refer to these two earth movement provisions as "original" and "new" versions (referring to the provision in the main body of the policy and the New Mexico endorsement, respectively). Plaintiffs claim that Liberty relied only on the "original" version in its first denial letter of October 3, 2015. Defendant claims that only the New Mexico endorsement applies to the Favas' policy, *see* Doc. 87 at 15, n.2, but the record contradicts this claim. The October 3, 2015 denial expressly relies on the earth movement exclusion language from the main body of the policy (referred to as the "original" versions by Plaintiffs). The later March 21, 2016 letter did not mention

8

an earth movement exclusion at all when citing to the policy provisions applicable to the denial of their claim. Plaintiffs are also correct that Liberty referred to the New Mexico endorsement for the earth movement provision for the first time in the July 16, 2016 denial letter. *See* Docs. 66-6, 66-7, 66-8 (Exs. R, S & T). In other words, Liberty argues that only the New Mexico endorsement applies to the Favas' policy when in fact, it relied solely on the earlier version of the earth movement exclusion in its first denial letter. This belies, or at least calls into question, Liberty's position that the New Mexico endorsement governs the Favas' policy.

Other disputes exist as well, on both the causation issue as well as the coverage issue.

## II. Facts Relating to Causation

As one of the grounds presented for summary judgment, Defendant contends that a fact finder will not be able to attribute the damages to Plaintiff's home from the water leak discovered on August 18, 2015. Liberty's position is that the damage to Plaintiffs' home was caused by water coming into crawlspace from outside the house over a long period of time *prior* to bursting of the water pipe, while Plaintiffs maintain that the damage was caused by the acute event of a burst water line causing water to flood the crawlspace area. However, the Court finds that facts relating to this issue are disputed, as these examples illustrate:

**Defendant's facts claiming that the cause of the structural damage was not the water leak, with opposing Plaintiffs' facts:**

- Liberty had hired the Rimkus Consulting Group to perform an inspection of the damage to the structure of the Fava residence. Rodrick Rennison, employed by Rimkus, inspected the residence and determined that the cracks [on the walls throughout the Favas' residence], etc., were not caused by water loss. Deft's Fact 28.

- Plaintiffs' expert, Gordon McKeen, could not determine when the water pipe cracked, why the water pipe cracked, how long it had leaked before Mr. Fava noticed it, whether it leaked slowly or quickly or whether it leaked for days, weeks or months. Deft's Fact 36, Ex. J at 75:6-16.

9

- *But see* Plaintiffs' Additional Fact ("PAF") V, Ex. 13 at 3: The cause of the structural damage to the Favas' home was "water infiltration into the soil and collapse of the soil structure in response to wetting removing the spot supports [sic] under the floor framing." PAF V, Ex. 13 at 3;

- Plaintiffs' PAF X: There is "ample evidence of excessive water accumulated in the crawl space as a result of the water leak Mr. Fava reported." Exhibit 8 (McKeen Rep't) at 6; and

- Plaintiffs' PAF Y: "The soil beneath the Favas' home is collapsible, silty sand, which is known to collapse upon wetting." Ex. 13 (McKeen Rep't) at 2-3.

**Defendant's facts regarding long-term damage from seepage from outside the house, rather than damage from an acute incident:**

- Sal Collins found that the cracks were not related to the August 2015 leak because they exhibited evidence of minor repairs, discoloration and dirt inside the cracks. Deft's Fact 26, Ex. A (Collins Dep.) at 80:21-81:9.

  - *But see* PAF U: "Nowhere in Mr. Collins's August 28, 2015, Claims Notes, does Mr. Collins refer to "discoloration and dirt" inside any cracks in the Favas' home." Exhibit 5; FAVA CF000861. Defendant objects to the implication that the adjuster did *not* in fact find cracks in Plaintiffs' house that did not exhibit evidence of minor repairs. Defendant thus essentially admits the existence of a dispute between what Collins testified in his deposition and what he included in the claims notes.

- Liberty's field adjuster (Collins) believed the cracking at the residence was caused by long-term settlement. Fact 31, *see* Ex. Q at 78:3-11.

  - *But see* PAF T: "Between August 28, 2015, and March 21, 2016, in its Claims Notes, Liberty reaffirmed its position three more times that "[t]he cracking throughout the home is the results [sic] of the sinking of the home due to the saturation of the ground under the subfloor from water flooding the crawlspace from the crack in the water line connector." Ex. 5, FAVA CF000845, FAVA CF000855, FAVA CF000857.

**Defendant's Facts About Conditions of House and Subsequent Modifications to Residence**

- The removal of load bearing wall caused the roof to sag, which indicates the cracks may have been caused by the removal of [a load-bearing] wall. Deft's Fact 32, Ex. Y (Chavez Rep't of March 14, 2018) at 4.

  - *But see* PAF JJ: The Favas did not notice any cracks of walls or ceilings, sloping of the floor, nor sagging of the roof between 1999, when the portion of the wall between the entryway and living room was removed, and August 18, 2015, when the water leak was discovered.

10

- Conditions of the residence that Plaintiffs claim were caused by the August 2015 water leak were caused by the quality of the original construction that was not code compliant and caused by subsequent modifications. Deft's Fact 37, Ex. Y (Chavez Rep't of March 14, 2018).

    - *But see* PAF II: Mr. Chavez' expert report disclosed as part of this litigation was the first time any person inspecting the home has mentioned "subsequent modifications" to the building as a potential cause of the claimed damage.

    - *See also* PAF F & G: Damage as a result of the water leak discovered August 18, 2015, occurred progressively after the leak was discovered, within hours, days and weeks. . . After Mr. Fava discovered the water leak on August 18, 2015, large cracks appeared in the walls and ceilings of the kitchen, living room, bathroom, TV room, and bedroom of the home, and the floors of the hallway, kitchen, and living room of the home began to slope. That structural damage occurred over the course of hours and days, and weeks after the water leak was discovered.

    - Defendant attempts to dispute Plaintiffs' facts here, by characterizing the Favas' affidavits as "self-serving." It is true that conclusory and self-serving affidavits are not considered for summary judgment purposes. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995). However, the affidavits presented here as Exhibits 1 and 2 are based on the Favas' personal knowledge, and so the Court may consider them. *Id.,* affidavits or declarations based on personal knowledge shall be admissible in evidence).

**Defendant's Facts about wear and tear causing the structural damage because of rot/wear and tear:**

- Rotting and wear and tear were evident in the home inspections, including that the floor supports underneath the living room area of the residence exhibited rot, as expected in a 53 year-old house. Deft's Fact 33.

    - *See* Pltff's Resp. to Fact 33: Plaintiffs do not dispute the existence of wear and tear, but they maintain that the rot and/or wear and tear in the crawlspace did not cause any of the damage to the house, essentially disputing the relevance of Defendant's fact.

    - *See also* PAF HH: The rotting and wear and tear found in the home inspections was not the cause of any damage to the house claimed by the Favas. The rotting and wear and tear was "unremarkable in a structure that is 53 years of age and is incidental to the damage caused by the sudden loss of support caused by flooding of the crawl space that produced settlement of spot footings supporting framing." Ex. (McKeen Rep't) at 4.

11

Based on the above, the Court finds that Plaintiffs have presented disputes of material fact sufficient to allow a jury to conclude that damages to their home can be attributed to the water leak discovered on August 18, 2015. Thus, summary judgment is precluded on the causation issue.

## III. Facts Relating to Denials of Coverage

Defendant's alternative argument is that even if the water leak caused the structural damage to Plaintiffs' home, the undisputed material facts establish that the insurance policy does not cover these damages based on certain uncovered or excluded perils, such as wear and tear, earth movement, water damage and seepage.

The obligation of an insurer is a question of contract law and will be determined by reference to the terms of the insurance policy. *Safeco Ins. Co. of Am. v. McKenna*, 1977-NMSC-053, 90 N.M. 516, 520. The policy should be construed as a complete and harmonious instrument. *See Erwin v. United Benefit Life Ins. Co.,* 70 N.M. 138 (1962). Where a clause "read alone is clear and unambiguous . . . it is not necessary to read the coverages together," because "there is a risk of creating, rather than identifying, ambiguity." *Battishill v. Farmers Alliance Ins. Co.*, 2006–NMSC–004, ¶ 16, 139 N.M. 24. "Insurance contracts are construed by the same principles which govern the interpretation of all contracts." *Dove v. State Farm Fire & Cas. Co.*, 2017-NMCA-051, ¶ 17.

Viewing the facts favorably to Liberty as the movant, the Court notes the following facts: Plaintiffs were sent three letters from Defendant denying their claim, except for an amount of $337.44 (less the $1,000.00 deductible) to cover the emergency services to dry out the water damage inside the house. The letters were sent by Liberty on: October 3, 2015 (Ex. R), March 21, 2016 (Ex. S), and July 16, 2016 (Ex. T):[4]

---

[4] There also appears to have been an earlier initial claim denial, in September 2015, which parties have not mentioned in the pleadings for this motion. *See* Doc. 98 at 3.

- The cited policy provisions for denial of Plaintiffs' claim in the October 3, 2015 letter were based on the 2(e) coverage exceptions (including wear and tear; inherent vice and wet or dry rot); and the earth movement exclusion from language set forth in the main body of the policy, *not* the New Mexico endorsement. Ex. R (Doc. 68-6 at 3).[5]

- The March 21, 2016 letter added, as grounds for denial of Plaintiffs' claims, the coverage exception for settling and the water seepage exclusion. Ex. S.

- The July 16, 2016 denial letter includes the 2(e) exceptions (settling, wear and tear, rot), and exclusions for water seepage and earth movement—except that this time, the earth movement exclusion language is based on the New Mexico endorsement.

Against this background, Plaintiffs present facts precluding summary judgment on the coverage issue as well:

**Defendant's Facts Regarding Reasons for Denial of Coverage**

- Liberty advised the Favas of the coverage that was accepted and coverage that was denied, first by its letter dated October 15, 2016, and subsequent letters dated March 21, 2016 and July 16, 2016. Deft's Fact 29.

    - *But see* Pltffs' Resp. to Fact 29: Plaintiffs did not receive the July 16, 2016, and there is a genuine issue of material fact as to whether Liberty ever sent that letter. The Plaintiffs' First Amended Complaint did not mention the July 16, 2016, letter because the Plaintiffs had never seen that letter before it was produced on October 21, 2016, as part of Defendant's Response to Plaintiffs' First Set of Requests for Production.

    - *See also* PAF LL: The [July 16, 2016] letter is in draft format. The Court notes that this fact is supported by the evidence. In the letter, presented as Ex. T, the section describing the "seepage'" exclusion does appear to be an incomplete reference to that provision, with part of the provision stopping at mid-sentence. See Doc. 68-8 at 2.

    - *See also* PAF MM: There is no entry in Liberty's Claims File showing that the July 16, 2016, draft letter was sent to the Favas. Exhibit 5, FAVA CF000843.[6]

---

[5] The Court makes no finding here as to which earth movement provision applied to the Favas' insurance policy, but the Court notes that Liberty bases its motion for summary judgment on the New Mexico endorsement version of the earth movement provision. *See* Doc. 87 at 15-17. The Court finds there is a dispute as to which version applies to the policy. Liberty's October 3, 2015 denial cited the earlier version of the exclusion but included the New Mexico endorsement version in a letter sent to Plaintiffs in July 2016 which Plaintiffs claim they never received.

[6] The Court cannot resist noting that finding Liberty's "response" to PAF MM is yet another example of a wild goose chase through several pleadings only to find at the end, no material dispute at all. In order to view Defendant's "response" to PAF MM, one was directed to Defendant's response to PAF XXX in Doc. 79 and then to its response to PAF ZZ in Doc. 75 (response brief to Deft's MSJ on Plaintiffs' Emotional Injury Claims). However, there is no

- In Deft's Fact 2, Liberty sets out language describing the 2(e) exceptions from coverage, followed by this language:

    > If any of these [exceptions from coverage in section 2(e)] cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

*See* Doc. 70 at 4-5.

    - *But see* PAF RR: the October 3, 2015 denial letter omitted the above language from the 2(e) policy language. Plaintiffs contend that this language was pertinent to their claims and would have brought the structural damage to their home within coverage.

    - Defendant disputes PAF RR by stating: Liberty's 30(b)(6) representative testified that the language was likely omitted because "they didn't feel there was an ensuing loss that was accepted." Ex. 19 at 183: 10-25.

Defendant's response to PAF RR fails to create a factual dispute. The October 3, 2015 denial letter speaks for itself: the above policy language was not included in the letter.

As previously discussed, this case is not suitable for disposition on summary judgment because of the existence of material factual disputes and also because both sides intend to introduce expert testimony. The Court has reviewed the expert reports which as discussed previously, leave many of the critical issues disputed. Plaintiffs' expert reports (McKeen reports, Exs. 8 & 13) counter almost every point made in the reports by Liberty's experts (Rimkus and Chavez, *see* Exs. X & Y). As one example: Liberty contends, based on the Rimkus report, that the moisture in the crawl space under the ground floor of the house was the result of water intrusion into the crawl space from outside the house over a long period of time, prior to the water leak. However, the

---

PAF ZZ in Doc. 75; Plaintiffs' additional facts in that pleading stop at "L." Liberty could have properly created a material factual dispute to PAF MM by presenting some evidence that Defendant had in fact sent out the July 16, 2016 letter to Plaintiffs (perhaps a note in the Claims File that Plaintiffs had missed?) Instead, Defendant set out to create confusion on the issue, which does not advance its position at all.

McKeen report takes on the Rimkus report conclusions, finding that there was no evidence of water intrusion into the crawl space over the life of the house, and that "[h]ad there been an excessive amount of water present in the crawl space for a long time wood damage would have been widespread and based [on]inspection it was not." Ex. 8 at 5.

Defendants challenge the basis for the McKeen report on this issue because McKeen did not test soil directly under the Favas' house. Doc. 87 at 5. However, such challenges—certainly not unexpected when both parties bring their own experts to the table—go to the weight of the evidence and for that reasons cannot be resolved on summary judgment. *See* 10A Fed. Prac. & Proc. Civ. §2726 (4th ed.), Grounds for Summary Judgment – Credibility.

## CONCLUSION

In sum, the Court finds and concludes that facts presented by Plaintiffs could infer that Liberty's grounds for denying the Favas' claim were not decided in good faith and that Liberty breached the contract of insurance and the associated covenant of good faith and fair dealing by failing to investigate Plaintiffs' insurance claim and by denying the claim under the policy for frivolous or unfounded reasons. Compl., 44 & 45. In addition, the introduction of expert testimony in this case requires weighing by a fact finder and precludes disposition by summary judgment.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment on Plaintiffs' Breach of Contract Claims **(Doc. 70)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE