# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

HECTOR FAVA and BARBARA FAVA,

    Plaintiffs,

    v.                                                            No. 17cv00456 WJ/LF

LIBERTY MUTUAL INSURANCE
CORPORATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## ON PLAINTIFFS' BAD FAITH CLAIMS

THIS MATTER comes before the Court upon a Motion for Summary Judgment on Plaintiffs' Bad Faith Claims, filed by Defendant Liberty Mutual ("Liberty" or "Defendant") on June 1, 2018 **(Doc. 69)**. Having reviewed the relevant pleadings of the parties and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

## BACKGROUND

Plaintiffs Hector and Barbara Fava are homeowners who are suing Liberty for damages under a Homeowners Policy ("Policy") issued by Liberty to Mr. Fava. Plaintiffs (or "the Favas") allege property damages to their home stemming from a water leak under their home. Plaintiffs initially filed the Complaint on July 29, 2016 in the Second Judicial District, County of Bernalillo, and Liberty removed the case to federal court under diversity jurisdiction on April 17, 2017.

According to the Complaint, on August 18, 2015, a pipe in the crawlspace underneath Plaintiffs' home burst, flooding the crawlspace with several inches of standing water. Almost immediately after the leak, Plaintiffs noticed cracks in load-bearing walls and a sloping floor.

Plaintiffs tried to stop the leak and reported the incident to Plaintiffs' insurer, Liberty. The water from the burst pipe caused the floor in Plaintiffs' kitchen and living room to begin sloping downward and large cracks to form in several load-bearing walls in the home. The Favas reported the damage to Liberty. Liberty investigated and concluded that much of the structural damage pre-existed the water leak and that the water leak caused Plaintiff the structural damages.

Plaintiffs assert that Liberty repeatedly denied coverage of Plaintiffs' claim based on inadequate investigations of the cause of the damage to the home as well as its misrepresentations about those investigations. Since August 2015, Plaintiffs' home has had a 10' diameter hole in the living room, made when Liberty performed its inspection of the damage to Plaintiffs' home. Because of Liberty's improper denial of coverage and mishandling of Plaintiffs' claim, Plaintiffs' home continues to deteriorate, and Plaintiffs have been unable to use a significant portion of their home since that time.

Defendant denies Plaintiffs' contentions. Following the reported water loss, Liberty retained independent adjusters to inspect the water loss and retained an engineer to inspect the water loss and report the findings. Based on those findings and the damages associated with the water leak, Defendant claims that it paid what was owed under the policy.

Liberty claims that the damage to Plaintiffs' home was caused by water coming into crawlspace from outside the house over a long period of time prior to bursting of the water pipe, and that coverage for such damage was excluded under the policy that was issued to Plaintiffs. Plaintiffs maintain that the damage was caused by the acute event of a burst water line causing water to flood the crawlspace area, which is a covered event under their policy. The Complaint asserts four claims for relief against Defendant:

Count I: Breach of Contract and the Covenant of Good Faith and Fair Dealing;
Count II: Violation of Unfair Practices Act;

2

Count III: Violation of New Mexico Insurance Code; and
Count IV: Negligence.

Defendant directs its arguments in this motion only to that part of Count I that is based on the covenant of good faith and fair dealing, seeking summary judgment solely on Plaintiffs' bad faith claims.

## I.     PROCEDURAL BACKGROUND

The Court has already touched on the bad faith issue in its Memorandum Opinion and Order denying Defendant's Motion for Summary Judgment on Plaintiffs' Breach of Contract Claims.  *See* Doc. 70.  The Court found that disputes of fact exist which support both parties' positions on Plaintiffs' claims of Breach of Contract and the Covenant of Good Faith and Fair Dealing in Count I.  *See* Doc. 100 at 8-10. The Court concluded that:

> . . . facts presented by Plaintiffs could infer that Liberty's grounds for denying the Favas' claim were not decided in good faith and that Liberty breached the contract of insurance and the associated covenant of good faith and fair dealing by failing to investigate Plaintiffs' insurance claim and by denying the claim under the policy for frivolous or unfounded reasons. Compl., 44 & 45. In addition, the introduction of expert testimony in this case requires weighing by a fact finder and precludes disposition by summary judgment.[1]

Because the same expert testimony would effectively preclude summary judgment on this motion as well, the Court does not intend to discuss in detail all the facts presented in the instant motion or to point out the entirety of disputed facts.  There is also another reason why the Court declines to weigh in on all of the numerous facts presented in the pleadings to this motion, and that is because the parties (Defendant in particular) have again presented the issues in a way that makes it unnecessarily tedious to wade through these facts.[2]  Defendant presents 53 "undisputed facts"

---

[1] Although Defendant sought summary judgment on Plaintiffs' breach of contract claim, facts were presented that were related to the issue of bad faith.

[2] *See* Doc. 100 at 5 & 13, n.6 (describing Court's efforts to find Defendant's response to Plaintiffs' additional facts as a "wild goose chase").

and Plaintiffs present 77 "additional undisputed facts." Instead of simply responding to the additional facts in the reply, Defendant refers to responses given to Plaintiffs' *other* additional facts from *other* motions. By the time Defendant's "response" is located in other briefs, it is difficult to remember the original additional fact. To illustrate, here is one example of the tedious process the Court was forced to follow in order to find Defendant's responses to Plaintiffs' additional facts:

- Defendant's response to Plaintiffs' additional fact V states: "Same as Plaintiffs' Additional Fact G in Doc. 75" (Doc. 79 at 11);
- Since Document 75 is the response brief to a previous motion for summary judgment filed by Defendant, [3] the Court must first locate the *reply* brief on the Court docket in order to find Defendant's response to "Plaintiffs' Additional Fact G in Doc. 75"'

- The *reply* brief containing Defendant's response to Plaintiffs' Additional Fact G in the summary judgment motion on Plaintiffs' emotional injury claims, is Document 90;

- Defendant's "response" to Plaintiffs' Additional Fact G in Doc. 90 (the reply brief to Defendant's summary judgment motion on Plaintiffs' emotional injury claims) states that the fact "is not supported by Plaintiffs' citation to the record." Doc. 90 at 3.[4] Thus, the Court must assume that this is also Liberty's "response" to Plaintiffs' Additional Fact V for the instant summary judgment motion on Plaintiffs' bad faith claims.

Liberty utilizes this method of responding to Plaintiffs' additional facts for the instant summary judgment motion to respond to almost *three-quarters* of Plaintiffs' additional facts. The Court will therefore include only a minimum number of facts to represent the disputed issues on Plaintiffs' bad faith claims.

---

[3] Doc. 75 is Plaintiffs' response to Defendant's Summary Judgment Regarding Plaintiffs' Emotional Injury Claims & Damages (Doc. 66), which the Court has denied. (Doc. 99).

[4] The entirety of Liberty's response to Plaintiffs' Addition Fact V is as follows:

> Fact G. Disputed. Fact G is not supported by Plaintiffs' citation to the record. Nowhere in the Exhibits that Plaintiffs reference is there evidence of "significant emotional distress" or Liberty's knowledge of such distress. Furthermore, what Clarence Wearmouth learned after the loss as to an insured's emotional distress is not relevant as to whether emotional distress damages were contemplated at the time the contract was entered into or recoverable under New Mexico law in connection with an insurance contract claim. . . .

4

Parties have submitted separate binders containing exhibits that are relevant to all pending motions in the case. The exhibits in Plaintiffs' binder are designated by number, while those in Defendant's binder are by letter. Exhibits may be referred to either by its number or letter, or by its document number; for example, Doc. 79-1 is Exhibit 40 in the binder submitted by Plaintiffs.

## II.    The Policy[5]

The Court includes the relevant policy provisions here for context. Liberty issued a policy for the policy period of February 10, 2015-February 10, 2016, to Barbara Fava and Hector Fava to insure their home located in Albuquerque, New Mexico. Doc. 66-1. The policy provided in pertinent part as follows, describing losses that were excepted from coverage:

**SECTION 1 - PERILS INSURED AGAINST**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to Property. We do not insure, however, for loss:

>     . . .
>
> 2.    Caused by:
>     . . .
>     (e) Any of the following:
>
>>    1.    Wear and tear, marring, deterioration;
>>    2.    Inherent vice, latent defect, mechanical breakdown;
>>    3.    Smog, rust or other corrosion, mold, wet or dry rot;
>>    . . .
>>    6. Settling, shrinking, bulging or expansion, including resultant cracking of pavements, patios, foundations, walls, floors, roofs or ceilings;
>>    . . .
>>
>>    9. Seepage, meaning a gradual, continuous, or repeated seepage or leakage of water, steam or fuel over a period of 14 days or more, resulting in damage to the structure, whether hidden or not.[6]

---

[5] Plaintiffs disputed the accuracy of certain policy provisions as set forth by Defendant. The Court sets forth the provisions here based on its review of the actual policy that was filed as an exhibit. See Doc. 66-1.

[6] The Seepage Exclusion was added to the policy as a separate endorsement. *See* Doc. 66-1 at 38. Plaintiffs claim that Defendant misquoted the seepage provision (which the Court refers to here relying on the policy language), but both parties appear to agree that this exclusion it applied to the Favas' policy during the relevant time.

> **If any of these [coverage exceptions in Section 2(e)] cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.** We do not cover loss to the system or appliance from which this water escaped.
>
> 3. Excluded under Section 1 — Exclusions.
>    Under items 1. And 2., any ensuing loss to property described in coverages A and B not excluded or excepted in this policy is covered.

Doc. 66-1 at 11 (emphasis added). The Liberty policy also listed specific losses that were expressly excluded from coverage:

> **SECTION 1 – EXCLUSIONS ("Earth Movement" and "Water Damage")**
> 1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is. excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>    . . .
>    b. Earth Movement, meaning earthquake including land shock waves or tremors before, during or after volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting unless direct loss by;
>       (1) Fire;
>       (2) Explosion; or
>       (3) Breakage of glass or safety glazing material which is part of a building, storm door, or storm window;
>    ensues and then we will pay only for the ensuing loss. This exclusion does not apply to loss by theft.
>
>    c. Water Damage, meaning:
>
>       (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;
>       (2) Water which backs up through sewers or drains or which overflows from a sump; or
>       (3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.
>
>       Direct low by fire, explosion or theft resulting from water damage is covered.
>    . . .

6

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.
. . .
    c. Faulty, inadequate or defective:
        (1) Planning, zoning, development, surveying, siting;
        (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
        (3) Materials used in repair, construction, renovation or remodeling; or
        (4) Maintenance of part or all of any property whether on or off the "residence premises."

Doc. 66-1 at 12-13. The "Earth Movement" exclusion was subsequently modified by a "**New Mexico Endorsement**" which Defendant contends applies to the Favas' policy rather than the original version of the exclusion, but the Court has already found that the evidence belies this contention. *See* Doc. 100 at 8-9 and discussion on "Claim Denials," below.

**SECTION 1 – EXCLUSIONS [New Mexico Endorsement] ("Earth Movement")**
**Coverage A—Dwelling and Coverage B—Other Structures**

The introductory language in SECTION 1 —Exclusions is deleted and replaced by the following:

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
. . .
    2. Earth Movement is deleted and replaced by the following:

    2. Earth Movement, meaning movement of the earth, **whether combined with water or not, in any direction, including but not limited to:**

      a. Earthquake, including land shock waves or tremors before, during, or after a volcanic eruption;
      b. Landslide, mud slide, or mud flow;
      c. Subsidence or sinkhole; or
      d. Any other earth movement, including earth sinking, rising, shifting, expanding, contracting, or eroding;
    caused by or resulting from manmade, animal, or natural actions, events, or conditions. If direct loss by fire or explosion ensues, we will pay only for the ensuring loss.

Doc. 66-1 at 28, Ex. A (Special Provisions-New Mexico) (emphasis added).

## III. Relevant Law

In construing an insurance policy, the Court in a diversity case looks to the law of the forum state and, if the state Supreme Court has not addressed the issue, the Court's duty is to determine, as best it can, how the issue would be resolved by state Supreme Court. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). The parties have stipulated that New Mexico law governs this case. Doc. 13 (Jt. Status Rep't) at 3.

An implied covenant of good faith and fair dealing protects against "bad faith or wrongful and intentional conduct that injures the other party's rights under the contract." *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, 133 N.M. 669, 687. As applied to insurance contracts, the covenant dictates that the insurer "not injure its policyholder's right to receive the full benefits of the contract, [or m]ore specifically, . . . that an insurer cannot be partial to its own interests, but must give its interests and the interests of its insured equal consideration." *Dairyland Ins. Co. v. Herman*, 1997-NMSC-005, ¶ 12, 124 N.M. 624 (internal quotation marks and citations omitted).

An insurer's incorrect decision to refuse benefits, without more, is not enough to establish bad faith. *Yumukoglu v. Provident Life & Acc. Ins. Co.*, 131 F. Supp. 2d 1215, 1226 (D.N.M. 2001), *aff'd,* 36 F. App'x 378 (10th Cir. 2002). Under New Mexico law, an insurer acts in bad faith when it denies a first party claim for reasons that are unfounded or frivolous. *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004–NMSC–004, ¶¶ 2-3, 135 N.M. 106; N.M. U.J.I.-Civ. 13-1702. If an insurer has a reasonable basis to dispute or deny the claim, then summary judgment is appropriate. *Yumukoglu v. Provident Life & Acc. Ins. Co.*, 131 F.Supp.2d 1215, 1226 (D.N.M. 2001). The term "unfounded" means "reckless disregard" in which the insurer "utterly fail[s] to exercise care for the interests of the insured in denying or delaying payment on an insurance policy" and where

there is an arbitrary or baseless refusal to pay, lacking support in the language of the policy or the circumstances of the claim. "*Id.* (quoting *Jackson Nat'l Life Ins. Co. v. Receconi*, 1992-NMSC-019, ¶ 18, 113 N.M. 403 (alteration and emphasis in original) (internal quotation marks omitted).

The concept of bad faith or failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy. *See Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 1994-NMCA-007, ¶¶ 17 and 20, 117 N.M. 82 citing *American Employers' Ins. Co. v. Crawford*, 1975-NMSC-020, 87 N.M. 375. There can be no breach of an obligation which does not exist. *See Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 753 F.2d 824, 826 (10th Cir. 1985). Thus, there can be no viable bad faith claim if Liberty is not obligated to cover the damages to Plaintiffs' home. *See Yumukoglu,* 131 F.Supp.2d at 1226 (summary judgment in inappropriate if an insurer has a reasonable basis to deny the claim). Under New Mexico law, a plaintiff has the burden of proving that his claim falls within the coverage provided. *Leafland Group – II Montgomery Towers Ltd. Partnership v. Ins. Co. N. America*, 1994-NMSC-088, ¶ 13, 118 N.M. 281.

Plaintiffs contend that insurers *can* be held liable for bad faith insurance practices even where there is no duty to pay under the policy. They base their bad faith claims on more than Liberty's refusal to pay, for example, by (1) acting dishonestly in the performance of the insurance contract; (2) failing to fairly investigate and evaluate their claim and by acting unreasonably in deciding there was no coverage for the Favas' claim; (3) misrepresenting pertinent facts concerning coverage under the policy in deciding; (4) unreasonably relying on clearly inapplicable policy provisions to justify its denial of coverage; and (5) denying their claim for frivolous and unfounded reasons. Doc. 79 at 23. Plaintiffs maintain that these claims are separate and independent from a bad faith claim based on refusal to pay.

9

Plaintiffs are correct that under New Mexico law, bad faith claims may be based on conduct separate from a refusal to pay, citing *Progressive Cas. Ins. Co*, 2018-NMSC-014, ¶ 24 and *O'Neel v. USAA Ins. Co.,* 2002-NMCA-028, ¶9, 31 P.3d 356. However, these cases do not stand for the proposition that there can be viable bad faith claims where there is no coverage under the policy; neither *Progressive* nor *O'Neel* held that when there is *no* coverage under the policy, there can still be a finding of bad faith. Thus, a claim based on an insurer's *refusal* to pay assumes there is an obligation to provide coverage in the first place. *See Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 1994-NMCA-007, ¶ 1, 117 N.M. 82, 868 P.2d 1307 (finding that "absent any contractual obligation to pay under the policy, we do not believe the concept of bad faith comes into play.").[7]

## IV. Legal Standard

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc*., 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute—as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Ser*v., 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248.

---

[7] *See also Woodmen Acc. & Life. Ins. v. Bryant*, 784 F.2d 1052 (10th Cir. 1986) ("Because Woodmen had no obligation to pay the St. Francis expenses, its refusal to pay, by definition, was not frivolous or unfounded."); *Frietze v. Allstate Ins. Co*., No. CV 12-840 WJ/CG, 2013 WL 12333993, at *2 (D.N.M. Mar. 18, 2013) (citing *Charter Services* and *Woodmen Acc. & Life Insurance* for the proposition that without coverage, there can be no bad faith); *Christy v. Travelers Prop. & Casualty Ins. Co*., No. 13CV0281 WJ/LFG, 2013 WL 12159449, at *2 (D.N.M. Aug. 29, 2013) (same).

The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## DISCUSSION

Defendants seek summary judgment on Plaintiffs' bad faith claims because:

(1)  the Favas' homeowners' insurance policy does not provide coverage for the claims made;

(2)  even if there is coverage under the policy, Liberty did not act in bad faith because its decisions were not frivolous or unfounded and its investigation was not inadequate; and because

(3)  Liberty is entitled to summary judgment on the punitive damages claim because Plaintiffs have no evidence of the requisite culpable mental state.

### I. General Undisputed Facts[8]

The following are the bare pertinent facts for purposes of the Court's rulings herein:

- *August 2015:* Mr. Fava discovered water leaking into his front yard from beneath his home on August 18, 2015. He was unsuccessful at turning off the water himself, and called the water department. When Mr. Fava removed the plastic panels covering the access panels to the crawlspace entrances, he found there was standing water in the crawlspace which flowed out the entrances. A plumber came out to the house that day and the following day to find the source of the water leak and repair it, and showed Mr. Fava a crack in the main water line running into the house which had broken directly beneath the east wall of the house north of the front door.

- Liberty sent a field adjuster, Sal Collins, to inspect the loss and contacted a water mitigation specialist (ServPro) to provide mitigation services. Serv Pro provided these services on August 20, 2015 and installed drying equipment which was removed a few days later. After inspecting the home, Mr. Collins determined the cracks were related to long-term settlement and not the August 2015 leak, finding that the "cracking throughout the home is the result of the sinking of the home due to the saturation of the ground under the subfloor from water flooding the crawlspace from the crack in the water line connector. . . ."
- On August 31, 2015, after Mr. Collins inspected the home, Mr. Fava was informed by liberty that there was no coverage for the possible foundation loss or structural damage. When Plaintiffs disagreed with Liberty's findings, Liberty hired an outside consultant, Rimkus Consulting Group, Inc., to inspect the residence's structural damage. Rodrick Rennison, a licensed engineer, was assigned to investigate the loss. Mr. Rennison's report, ("the Rimkus report") which was completed on September 24, 2015, determined

---
[8] The Court omits references to exhibits for ease of reading, as these references are included in the briefs.

that the cracks and other damage to the home were not caused by the August 18, 2015 water loss.[9]

- *October 2015 – March 2016:* Based on the Rimkus report, Liberty advised the Favas by letters dated October 3, 2015 and March 21, 2016 that their claim would be only partially accepted, covering the expense of ServPro's remedial services, but not otherwise covering the repair of the house and foundation. (Parties dispute whether Liberty sent Plaintiffs a subsequent letter dated July 16, 2017).

- *May 2016 – July 2016:* After the Favas engaged counsel, Plaintiffs contested Liberty's repeated decisions to deny their claim. They provided Liberty with an engineering report dated May 14, 2016 prepared by a licensed engineer, Gordon McKeen. Liberty acknowledged receipt of the letter sent by Plaintiffs' attorney on June 22, 2016, as well as the McKeen Report.

- On July 29, 2016, Plaintiffs filed suit in the Second Judicial District, County of Bernalillo, and Defendants removed the case to federal court under diversity jurisdiction on April 17, 2017.

## II.    Claim Denials

As mentioned above, Plaintiffs were sent at least two letters denying their claim: on October 3, 2015 (Ex. R) and March 21, 2016 (Ex. S), and July 16, 2016 (Ex. T). Liberty claims that it sent Plaintiffs another denial letter on July 16, 2016, but Plaintiffs claim they never received the letter. The Court has found that a dispute existed as to whether Liberty ever sent the July letter to the Favas, *see* Doc. 100 at 13, but will include the July 2016 letter here, viewing the facts favorably for Defendant as the movant:

- The cited policy provisions for denial of Plaintiffs' claim in the October 3, 2015 letter were based on the 2(e) coverage exceptions (including wear and tear; inherent vice and wet or dry rot); and the *original* Earth Movement exclusion from language set forth in the main body of the policy. Ex. R (Doc. 68-6 at 3) (no coverage for "land movement causing the foundation of your dwelling to shift over time").

- The March 21, 2016 denial letter added, as grounds for denial of Plaintiffs' claims, the coverage exception for settling and the water seepage exclusion. Ex. S.

---

[9] Plaintiffs do not dispute that the Rimkus report makes these findings, but claim that the report contained "numerous false assumptions . . . that were contradicted by evidence known to Liberty." Pltffs' Rsp.to Defts' Fact 21. This case largely rests on the opinions and reports of different experts. Plaintiffs' own facts, which the Court will discuss later, are based on Plaintiffs' own expert reports.

- The July 16, 2016 denial letter includes the 2(e) exceptions (settling, wear and tear, rot), and exclusions for water seepage and for the first time relies on the Earth Movement language based on the New Mexico endorsement.

Liberty claims that the New Mexico endorsement language for the Earth Movement exclusion applies to Plaintiffs' policy but as mentioned previously, this fact is disputed, since the evidence shows that Liberty relied only on the original version of the Earth Movement provision to initially deny Plaintiffs' claim in the October 3, 2015 denial letter. *See* Doc. 100 at 13.

### III. Disputed Facts

These facts preclude summary judgment on Plaintiffs' bad faith claims:

A. <u>Whether There Was Coverage</u>

Liberty's denial letters cited to different exclusion provisions as the reasons for denial, yet Plaintiffs present disputes of fact as to whether these provisions applied to the facts and circumstances of the water damage to the Favas' home. The exclusions mentioned in the first October 3, 2015 letter (except for the Earth Movement exclusion) did not exclude from coverage those causes which occurred concurrently with covered causes of loss.[10] *See Winters v. Charter Oak Fire Ins. Co.*, 4 F. Supp. 2d 1288, 1295 (D.N.M. 1998) (Absence of concurrent causation language means that in order for the exclusion to be effective, insurer must show that the reason in the exclusion is the sole cause of the damage). This means that to deny coverage based on these exclusions, Liberty had to show that one or more of these were the *only* cause of the damage.

- *First Denial Letter, October 3, 2015:* The reasons for the denial here included wear and tear, inherent vice and wet or dry rot. Because there was no concurrent causation language in the policy for these exclusions, Liberty had to show that one or more of these were the *only* cause of the damage. Plaintiffs point out that Liberty knew that the crack

---

[10] *See* Policy provisions, above. For example, losses from "wear and tear," "inherent vice, latent defect and mechanical breakdown," and "wet or dry rot" were plainly excluded from coverage. Doc. 75-4 at 10. However, the Earth Movement exclusion included concurrent causation language in that under this provision, loss was excluded if caused by the specific earth movement "regardless of any other cause or event contributing concurrently or in any sequence to the loss." Doc. 75-4 at 11.

13

in the water line had contributed to the damage based on the report from Liberty's own field adjuster, Sal Collins. *See* Pltffs' Add'l Fact V (citing to report stating that cracking throughout the home resulted from sinking due to saturation of the ground which was due to "crack in the water line connector").

- o The letter also relied on the Earth Movement exclusion. Plaintiffs present facts where a reasonable juror could find that this exclusion did not apply to the facts and circumstances of the loss because the exclusion applies to earth movement resulting from *natural* causes—which would not include a cracked water pipe. *See Winters,* 4 F.Supp.2d at 1291 (noting that under New Mexico law, "earth movement" includes only naturally-occurring phenomena such as earthquake or landslide) (citing *United Nuclear Corp. v. Allendale Mut. Ins. Co.,* 103 N.M. 480, 709 P.2d 649 (1985)). Plaintiffs contend out that Liberty should have been aware of how this exclusion is interpreted under New Mexico law.

- *Second Denial Letter, March 21, 2016:* Liberty abandoned reliance on the exclusions cited in the first letter, relying instead on totally different exclusions for damages caused by "Seepage," Water Damage" and Settling." However, the "Seepage" exclusion could only apply to the facts of Plaintiffs' loss if the water leak had lasted longer than 14 days. *See* Doc. 77-16 at 2 (Seepage Exclusion Endorsement). The Court has already determined that the record contains evidence that the water damage may have been caused by an acute event such as a cracked water pipe, rather than long-term leakage. *See* Doc. 100 at 9-10 (Mem. Opin. & Order).

  - o Exclusions based on "Settling" and "water damage" also would not justify denial of coverage for the Favas' claim, as long as the loss was also caused by an event that was not excluded, such as a cracked water line. *Winters,* 4 F. Supp. 2d at 1295 (summary judgment denied where insurer had not shown that settling was sole cause of damage, where parties stipulated that a water break soaked the ground, causing soil movement leading to structural damage at issue). Because Liberty was aware of the cracked water line at the time it initially denied Plaintiffs' claim, a reasonable juror could find that the claim should have been covered.

- *Third Denial Letter, July 16, 2016:* as with the original Earth Movement exclusion, a dispute exists as to whether earth movement, "whether combined with water or not," refers to earth movement that is caused by a cracked water pipe. Even assuming that Liberty sent this letter), there is also a dispute as to whether the New Mexico endorsement language applies to Plaintiffs' claim, and whether they were ever provided information about this version of the exclusion.

- *Disputes Regarding Causation:* The Rimkus Report determined that the damage to Plaintiffs' home was caused by long-term moisture and water intrusion into the crawlspace from outside the house over a long period of time and prior to the water leak. Deft's Fact 23. Plaintiffs offer evidence disputing these findings by relying on Mr. McKeen's May 2016 engineering report in which McKeen identified what he considered

to be false assumptions and errors in the Rimkus report and favored Plaintiffs' position that the cause of the damage was more consistent with a break in the water line. *See* Add'l Fact QQQ & Ex. 8; *see also* Ex. 13;[11]

- Also, factual disputes as to causation—and therefore whether the claim should have been covered—exist because both sides are presenting expert testimony and so as the Court has previously noted, this issue cannot be resolved on summary judgment. *See* Doc. 100 at 14-15.

Based on the above selected factual disputes (as well as others not recited herein), a reasonable juror could find that the Favas' homeowners' insurance policy does provide coverage for Plaintiffs' claims, and therefore Defendant is not entitled to summary judgment.

B. <u>Disputes of Fact Relevant to Bad Faith</u>

Liberty claims that even if there is coverage under the policy, Liberty did not act in bad faith because its decisions were not frivolous or unfounded and its investigation was not inadequate. However, Plaintiffs present the following evidence which creates material issues of fact on this issue as well:

- Liberty did not explain in its denial letters why the grounds for denial in earlier letters had been abandoned. *See* Pltffs' Add'l Fact PPP (noting Liberty's admission that the first two denial letters are not consistent with each other). A reasonable juror could infer from this that Liberty's denial of Plaintiffs' claim was arbitrary and capricious or even unfounded, and that Liberty was unreasonably in relying on clearly inapplicable policy provisions to justify its denial of coverage.

- Facts which contradicted the Rimkus report findings were known to Liberty at the time that report was prepared, and were also available to Liberty when Plaintiffs subsequently forwarded the McKeen report. These facts include specific information regarding the sloping of the house, the relevance of a moisture barrier for New Mexico residences; the number of vents in the crawlspace from which water could have flowed; and the cover over the crawlspace access panel. These facts are significant in that Liberty relied in large part on the Rimkus findings to deny Plaintiffs' claim. Pltffs' Add'l Fact UU; Add'l Facts VV – AAA.

- Liberty claims that it hired Rimkus to determine the "cause and origin" of the cracking in the property. Deft's Fact 19. However, Plaintiffs present facts suggesting that Rimkus was biased in favor of supporting Liberty's previous denial of coverage and that it was

---

[11] This McKeen report, dated February 14, 2018, was generated after the instant lawsuit was filed and for that reason perhaps has limited value to the issues here. However, this report is consistent with McKeen's findings in the early May 2016 report.

hired to support Liberty's decision to deny Plaintiffs' claim as early as August 2015. *See* Pltffs' Add'l Fact MM; Ex. 18 at 29-30 (opining that Rimkus was retained "to look for facts which support a denial of coverage" rather than to determine cause and origin of damage.); Pltffs' Add'l Fact PP & Ex. 27 (Rimkus email dated July 12, 2016 wherein Mr. Rennison states after the receiving the McKeen report, that: "We have our first fight on our hands.").

- Liberty states that it advised Plaintiffs that their claim would be on hold pending an additional report (the McKeen report). Deft's fact 15. However, Plaintiffs point to evidence in Liberty's claims notes indicating that Liberty had decided to deny coverage even before it received McKeen's report. *See* Pltffs' Add'l Fact AA; Ex. 5, FAVA CF000854-855 (September 8, 2015 note stating "Claim concluded and submitted for review and approval").

- Liberty states that Plaintiffs filed suit on July 29, 2016, before Rimkus could fully evaluate the McKeen report and provide its findings to Liberty. Deft's Fact 29. Plaintiffs do not dispute these specific facts, but offer facts suggesting that Liberty delayed the evaluation of the McKeen report. Pltffs' Add'l Fact SSS & supp. exhibits (Liberty waited three weeks from receiving Plaintiffs' final good faith letter and the McKeen report before sending the report to Rimkus for evaluation); Add'l Fact UUU & Ex. T (Liberty drafted final denial letter of July 16, 2016 four days after referring McKeen report to Rimkus for review and before receiving any response from Rimkus.

This evidence presented by Plaintiffs could suggest to a reasonable juror that Liberty had no intention of considering any findings that were contrary to the Rimkus evaluation which supported denial, even when contradictory evidence existed. This is evidence that could support Plaintiffs' position that Liberty acted unreasonably in denying Plaintiffs' claims by failing to investigate the claims in good faith; that it was partial to its own interests; and that it acted dishonestly in the performance of the insurance contract.

    C.    <u>Punitive Damages</u>

Last, Liberty contends that it is entitled to summary judgment on the punitive damages claim because Plaintiffs have no evidence of the requisite culpable mental state. However, Plaintiffs have presented facts, some of which the Court has included in this discussion, which could support a jury's finding that Liberty acted in bad faith in investigating Plaintiffs' claims and

the Court finds it unnecessary to reiterate them here. Therefore, Liberty is not entitled to summary judgment on Plaintiffs' punitive damages claim.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment on Plaintiffs' Bad Faith Claims **(Doc. 69)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE