# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

HECTOR FAVA and BARBARA FAVA,

       Plaintiffs,

    v.                                                17cv00456 WJ/LF

LIBERTY MUTUAL INSURANCE
CORPORATION,

       Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AS TO COUNTS II AND III
## and
## GRANTING SUMMARY JUDGMENT ON COUNT IV NEGLIGENCE CLAIM

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment on Plaintiffs' Statutory Claims and Negligence (Counts II, III and IV), filed June 1, 2018 (**Doc. 68**). Having reviewed the parties' briefs and applicable law, the Court denies Defendant's motion as to Counts II and III, but grants Defendant's motion as to Count IV.

Plaintiffs Hector and Barbara Fava are homeowners who are suing Liberty for damages under a Homeowners Policy ("Policy") issued by Liberty to Mr. Fava. Plaintiffs (or "the Favas") allege property damages to their home stemming from a water leak under their home. Plaintiffs initially filed the Complaint on July 29, 2016 in the Second Judicial District, County of Bernalillo, and Liberty removed the case to federal court under diversity jurisdiction on April 17, 2017.

According to the Complaint, on August 18, 2015, a pipe in the crawlspace underneath Plaintiffs' home burst, flooding the crawlspace with several inches of standing water. Almost

immediately after the leak, Plaintiffs noticed cracks in load-bearing walls and a sloping floor. Plaintiffs tried to stop the leak and reported the incident to Plaintiffs' insurer, Liberty. The water from the burst pipe caused the floor in Plaintiffs' kitchen and living room to begin sloping downward and large cracks to form in several load-bearing walls in the home. The Favas reported the damage to Liberty. Liberty investigated and concluded that much of the structural damage pre-existed the water leak and that the water leak caused Plaintiff the structural damages.

Plaintiffs assert that Liberty repeatedly denied coverage of Plaintiffs' claim based on inadequate investigations of the cause of the damage to the home as well as its misrepresentations about those investigations. Since August 2015, Plaintiffs' home has had a 10' diameter hole in the living room, made when Liberty performed its inspection of the damage to Plaintiffs' home. Because of Liberty's improper denial of coverage and mishandling of Plaintiffs' claim, Plaintiffs' home continues to deteriorate, and Plaintiffs have been unable to use a significant portion of their home since that time.

Defendant denies Plaintiffs' contentions. Following the reported water loss, Liberty retained independent adjusters to inspect the water loss and retained an engineer to inspect the water loss and report the findings. Based on those findings and the damages associated with the water leak, Defendant claims that it paid what was owed under the policy.

Liberty claims that the damage to Plaintiffs' home was caused by water coming into crawlspace from outside the house over a long period of time prior to bursting of the water pipe, and that coverage for such damage was excluded under the policy that was issued to Plaintiffs. Plaintiffs maintain that the damage was caused by the acute event of a burst water line causing water to flood the crawlspace area, which is a covered event under their policy. The Complaint asserts four claims for relief against Defendant:

Count I: Breach of Contract and the Covenant of Good Faith and Fair Dealing;
Count II: Violation of Unfair Practices Act;
Count III: Violation of New Mexico Insurance Code; and
Count IV: Negligence.

Doc. 1-3 (First Am. Compl.) at 15. The Court has become quite familiar with this lawsuit, having denied relief to Liberty on four of dispositive motions Defendant has filed. *See* Docs. 98, 99, 100 and 101 (denying relief on Docs. 66, 67, 69 and 70). This last motion, addressing Counts II, III and IV, is the last dispositive motion presented for the Court's consideration.

The Policy provisions and factual background in this case have been set forth in detail by the Court's recent decisions denying summary judgment on Plaintiffs' claims for emotional injury, breach of contract and bad faith claims, *see* Docs. 99, 100 and 101, and there is no reason to reiterate them here.

**I.      Count II: Violation of Unfair Practices Act**

Plaintiffs allege that Liberty violated the New Mexico Unfair Practices Act ("UPA") by failing to deliver the quality and quantity of goods or services contracted for; representing that services have characteristics, uses, benefits, or quantities that they do not have; and knowingly making false or misleading oral and written statements in connection with the sale, lease, rental or loan of services. *See* NMSA 1978 §§57-12-2(D)(17). A claim under the UPA has four elements:

> First, the complaining party must show that the party charged made an oral or written statement, visual description or other representation that was either false or misleading. Second, the false or misleading representation must have been knowingly made **in connection with the sale, lease, rental or loan of goods or services** in the extension of credit or . . . collection of debts. Third, the conduct complained of must have occurred in the regular course of the representer's trade or commerce. Fourth, the representation must have been of the type that may, tends to or does, deceive or mislead any person.

*Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 749 F.Supp.2d 1235 (2010) (internal quotation marks omitted) (emphasis added) (quoting *Stevenson v. Louis Dreyfus Corp.*, 1991-

NMSC-051, 112 N.M. 97, 100, 811 P.2d 1308, 1311. "The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 17, 125 N.M. 748.

Defendant claims that even assuming that misrepresentations were made to Plaintiffs in connection with the August leak, they cannot have been made "in connection with" an insurance policy that had already been sold to them and Plaintiffs therefore cannot sustain a claim under the UPA. *See Eisert v. Archdiocese of Santa Fe*, 2009-NMCA-042, ¶¶ 22-28, 146 N.M. 179 (affirming summary judgment for defendants where plaintiff offered no evidence that defendants made knowing misrepresentations "at the time" services were contracted for).

Plaintiffs contend that New Mexico law holds that an actionable misrepresentation under the UPA can be made after a sale of goods and services has been consummated as long as "it occurred in connection with the commercial relationship for which the Defendant[s] were compensated." *Maese v. Garrett*, 2014-NMCA-072, ¶19, 329 P.3d 713. Plaintiffs' understanding of the law is accurate and is supported by both the legislative intent behind the statute as well as its plain language. A viable UPA claim is not foreclosed by the fact that the alleged misrepresentations took place after the sale of the policy. *See Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 30, 142 N.M. 437, 443, 166 P.3d 1091, 1097. An "unfair or deceptive trade practice" does not require "a misrepresentation *in the course of* a sale between plaintiff and defendant; it merely requires that a misrepresentation be "made *in connection with* the sale . . . of goods" generally. *Id.* (emphasis in original). The legislative intent of the UPA affords the statute a broad enough scope "to encompass misrepresentations which bear on downstream sales by and between third parties." *Id.; see also State ex rel. Stratton v. Gurley Motor Co.,* 105 N.M. 803, 808,

737 P.2d 1180, 1185 (Ct.App.1987) (interpreting UPA "liberally to facilitate and accomplish its purposes and intent.").

In *Maese v. Garrett,* the New Mexico Court of Appeals held that misrepresentations made after the sale of goods and services could support a claim under the UPA, specifically rejecting previous decisions suggesting that the alleged misrepresentation had to be made in the course of selling a product or services to the plaintiff. 2014-NMCA-072, ¶18. Defendant initially relied on *Maese* to argue that Plaintiffs could *not* pursue a UPA claim based on a misrepresentation made after the sale of the policy. After having been caught in what the Court considers to be a misstatement of the law in *Maese,* Defendant abandoned its initial approach in the reply and switched to the argument that *Maese* is factually distinguishable and therefore does not apply to Plaintiffs' UPA claim. Doc. 91 at 22. However, any factual distinctions do not change the black-letter statement of the law, which applies here as well as in *Maese*.

Having determined the relevant legal standard, the next question is to decide whether Plaintiffs have presented any facts to dispute Defendant's position that there is no evidence of misrepresentation. The Court finds that Plaintiffs have done so:

- *Factual Disputes Regarding Grounds for Denial*: Liberty sent Plaintiffs three letters denying their claim: on October 3, 2015, March 21, 2016 and July 16, 2016. Doc. 100 at 12-13. The second and third letters contained different grounds for denial, and abandoned some of the grounds previously cited. Liberty offered no explanation why the grounds for denial in its earlier letters had been abandoned. Doc. 101 at 15.[1]

    o For example, in its first denial letter, Liberty cited as grounds for the denial wear and tear; inherent vice; wet or dry rot; and earth movement. However, Liberty abandoned reliance on those exclusions in the second letter, relying instead on totally different exclusions for damages caused by seepage, water damage and settling—without any reason why there were now new reasons for denying Plaintiff's claim. A reasonable fact finder could view Liberty's conduct as an

---

[1] The Court's findings from previous decisions cite to specific facts which are omitted here for ease of reading. The Court's sole purpose here is to show that there are disputes of fact which remain on each of the claims on which Defendant seeks summary judgment.

5

actionable misrepresentation under the UPA, particularly here where the Court has found disputes of fact as to whether coverage existed. *See* Doc. 101 at 15.

- *Factual Disputes Concerning Investigation of Claim*: Liberty represented to Plaintiffs that their claim would be on hold pending an additional investigative report, but there is evidence that Liberty made the decision to deny the claim even before it received that report. *See* Doc. 101 at 16.

  o Evidence to support a finding of misrepresentation by omitting policy language that would have meant that the Favas' claim was covered, *see* Doc. 101 at 14 and changing the policy language Liberty used to deny the claim without doing any investigation to justify the change, *see* Doc. 100 at 8-9 and 13 (different "earth movement" exclusion cited in third denial letter). This evidence could suggest to a reasonable fact finder that Liberty failing to deliver the quality and quantity of goods or services contracted for, which is proscribed under the UPA.

The evidence offered by Plaintiffs creates factual disputes on the UPA claim and therefore Defendant is not entitled to summary judgment on this claim.

## II.    Count III: Violation of New Mexico Insurance Code

### A.    Viability of Claim If There is No Coverage

The New Mexico Unfair Insurance Practices Act, NMSA 1978 59A-16-20 ("UIPA"), requires proof that the claims-handling conduct complained of was knowingly committed or committed with such frequency that it constitutes a general business practice of the insurer. Such conduct includes but is not limited to misrepresenting pertinent facts or policy provisions at issue; and failing to promptly provide an insured a reasonable explanation for a denial of the claim.

Defendant argues that Plaintiffs cannot maintain their claims for violations of the UIPA if there is no coverage under the Favas' policy. Liberty made this same argument in its motion for summary judgment on Plaintiffs' bad faith claims (Doc. 69), and Plaintiffs had responded by insisting that insurers can be held liable for bad faith insurance practices even where there is no duty to pay under the policy. The Court found in favor of Liberty on this legal issue:

> Plaintiffs are correct that under New Mexico law, bad faith claims may be based on conduct separate from a refusal to pay, citing *Progressive Cas. Ins. Co*, 2018-

NMSC-014, ¶ 24 and *O'Neel v. USAA Ins. Co.*, 2002-NMCA-028, ¶9, 31 P.3d 356. However, these cases do not stand for the proposition that there can be viable bad faith claims where there is no coverage under the policy;

Doc. 101 at 10. Plaintiffs now adopt the same stance with regard to their UIPA claim, arguing that "[j]ust as a common-law bad faith claim can be based on a failure to fairly investigate a claim, the UIPA prohibits certain specifically enumerated claims-handling practices by an insurance company, independent of the insurer's duty to pay a claim." Doc. 77 at 21. However, they rely on the same cases, *Progressive Casualty* and *O'Neel,* which doomed their argument with respect to their bad faith claims and do not help them now, either. The absence of a duty to cover an insurance claim removes the legal basis for a UIPA claim as well. *See Certain Underwriters at Lloyd's London Subscribing Policy No. C111271/054 v. New Mexico Psychiatric Servs. Corp.,*(slip copy) 2015 WL 11670154, at *6 (D.N.M. Aug. 13, 2015) (rejecting insured's argument that she could proceed with bad claim in absence of underlying coverage).

However, the UIPA claim proceeds for the time being since the Court has found that disputes of material fact exist on the coverage issue.

B. <u>Merits of UIPA Claim</u>

There are genuine issues of material fact as to whether Liberty misrepresented policy provisions relevant to the Favas' claim for insurance coverage in its October 3, 2015, and March 16, 2016, denial letters:

- Misquoting policy language on exclusions that was not included in denial letters. *See* Ex. 19 (Marc Hill Depo.) at 171-172 (acknowledging errors quoting policy language in denial letters and stating that "[w]hether it conveyed the information correctly . . . would be an interpretation thing. . . .").

- Liberty initially represented to Plaintiffs that Liberty would cover other water damage to property, excluding plumbing expenses; and then denied the Favas' claim because it determined the damages to the Favas' home were not covered because they were "water damage." Ex. 6 (Wearmouth Depo.) at 175:9-23; Ex. 33; Ex. 19 at 183:10-25; Pltffs' Add'l Facts KK PMF SS.

7

- Omission of language stating that there is coverage for loss caused by water, except for certain specified conditions under section 2(e) of the policy. *See* Doc. 66-1, or Ex. A, at 11.[2] This evidence creates a factual dispute over whether this language brings the structural damage to the house within coverage. *See* Doc. 100 at 14.

- Liberty told Plaintiffs that their claim was still being investigated and was "on hold" pending Mr. Fava providing a report from an engineer, where Liberty had actually decided to deny the claim before receiving the report. *See* Doc. 101 at 16.

- Material factual disputes also exist over whether Liberty failed to provide Plaintiffs with a reasonable explanation for a denial of the claim. The Court has already described disputes surrounding the grounds for denial of Plaintiffs' claim, where Liberty kept shifting the reasons for denial set out in the denial letters.

C.     "General Business Practices" Under the UIPA

Defendant contends that Plaintiffs' UIPA claim fails because there is no evidence that any of the alleged conduct occurred with such frequency so as to constitute a "general business practice" of the insurer, as is required for a claim brought under the UIPA. Plaintiffs, however, do provide enough evidence to create factual disputes that support a claim:

- Clarence Wearmouth, Liberty's desk adjuster assigned to oversee the handling of Plaintiffs' claim, testified at his deposition that the way Liberty handled the Favas' claim conformed to how Liberty wanted claims handled in general. Wearmouth believed Liberty handled the claim "great," and that if presented with a similar claim Liberty would handle it the same way it handled the Fava claim. Pltffs' Add'l Fact FFF and supp. exhs. (Ex. 6 at 181:1-183:17).

    o Sal Collins, a field adjuster employed by Liberty had determined following his inspection that the settling to the home was caused by the crack in the water line and therefore fell within coverage under the policy. Ex. 24 at 93:10-17. However, Wearmouth told Collins that the Favas' claim would be denied and directed Collins to write in his Claims Notes that "Shifting of the home is not a covered peril" under the policy. Pltffs' Add'l Fact I and supp. exh. (Ex. 24 at 93:10-27; at 98:12-17).

    o Marc Hill, testifying on behalf of Liberty at a 30(b)(6) deposition, stated that the way Liberty handled the Favas' claim complies with the company's general business practices. Ex. 19 at 216:17-24.

---

[2] The 2(e) exceptions from coverage include, but are not limited to: wear and tear; inherent vice; latent defect; smog, rust or other corrosion; mold; wet or dry rot; settling; shrinking; bulging or expansion.

Based on this evidence, Plaintiffs have presented disputes of fact regarding their UIPA claim to survive summary judgment on that claim. Liberty does not take issue with the business practices described by its witness, but disputes whether the UIPA violations alleged by Plaintiffs are consistent with those practices. Such disputes will be considered by the jury and resolved at trial.

### D. Whether Alleged Conduct Was "Knowingly" Committed

Defendant contends that the evidence shows that Liberty did not "knowingly commit" any of the alleged violations under the UIPA. Plaintiffs claim that "knowingly commit" is synonymous with "awareness" or "insight" as the term "knowingly made" is defined in connection with the New Mexico Unfair Practices Act ("UPA"). *See Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 17, 112 N.M. 97, 100. Defendant balks at the definition supplied by Plaintiffs, yet offers nothing better and moves to dismiss the UIPA claim because Plaintiffs have not satisfied that element.

The Court will not dismiss the UIPA claim simply because Defendant disagrees with whether an element of the claim has been adequately defined—particularly when Defendant offers no counter-definition for the Court to consider. Moreover, this issue need not be resolved now. The UIPA prohibits certain practices by an insurer that are "knowingly committed *or* performed with such frequency as to indicate a general business practice. . . ." N.M. Stat. Ann. §59A-16-20 (emphasis added). As explained above, Plaintiffs have presented sufficient evidence regarding the "general business practice" alternative to proceed on this claim.

The Court therefore finds that Plaintiffs have presented sufficient evidence to preclude summary judgment on the merits of their UIPA claim.

## III. Count IV: Negligence

9

Defendant contends Plaintiffs do not have any claims based on negligence because there is no cognizable cause of action for negligence in an insurance context. For this argument, Defendant relies on *Ambassador Insurance Co. v. St. Paul Fire & Marine Insurance Co.,* where the New Mexico Supreme Court held that New Mexico does not recognize a cause of action against an insurer for negligent failure to settle. 1984-NMSC-107, ¶ 13, 102 N.M. 28. Liberty acknowledges that there is no New Mexico case addressing specially whether an insured has a negligence claim against an insurer related to investigation and handling of insurance claims, separate and apart from a statutory claim or a bad faith claim. Nevertheless, Defendant argues that the reasoning and holding of *Ambassador* is relevant to Plaintiffs' claim. Plaintiffs contend that the facts in *Ambassador* deal with a failure to settle a third-party claim, and so the case is not relevant here.

The Court agrees with Liberty on this sole legal question for two reasons, which the Court discusses next.

      A.      <u>Relevance of the *Ambassador* Case</u>

The New Mexico Supreme Court started out its analysis in *Ambassador* recognizing the general rule that only those obligations contained in an insurance agreement are imposed upon the parties to that agreement. *Ambassador,* 1984-NMSC-107, ¶ 11, 102 N.M. 28, 30; *see Safeco Ins. Co. of Am., Inc. v. McKenna,* 90 N.M. 516, 520 (1977) ("An insurer's obligation to its insured is contractual and must "be determined by the terms of the policy."). Thus, imposing a negligence standard on the insurer would impose a duty that is not expressly provided for in the contract, with the exception of an insurer's additional duty to carry out its duties under the contract in "good faith." *Id.,* 1984-NMSC-107, ¶ 11, 102 N.M. 28, 30. However, the court considered that this "good faith" duty incorporates the elements of a negligence claim so that a separate negligence claim against the insurer did not exist:

> Thus, when failure to settle the claim stems from a failure to properly *investigate* the claim or to become familiar with the applicable law, etc., then this is negligence in defending the suit (a duty expressly imposed upon the insurer under the insurance contract) and is strong evidence of bad faith in failing to settle. Here, basic standards of competency can be imposed, and the insurer is charged with knowledge of the duty owed to its insured. In this sense, such negligence becomes an *element* tending to prove bad faith, but not a cause of action in and of itself. However, "where an insurer acts honestly and in good faith on adequate information, it should not be held liable for excess liability due to its failure to reach a settlement."

*Ambassador,* 1984-NMSC-107, ¶ 12, 102 N.M. 28, 31 (emphasis in original). The court also noted that an insurer's failure to settle is not actionable unless the failure is due to a lack of good faith. *Id.,* 1984-NMSC-107, ¶ 18, 102 N.M. 28, 33. The court's reasoning in *Ambassador* is not restricted to its facts, and the language cited above from the case supports the following: (1) an insurer has a duty to perform in "good faith" all of the duties contained in the insurance contract; (2) an insurer's duties are those expressly contained in the insurance contract; and (3) in the insurance context, negligence is an element of bad faith rather than a separate claim against the insurer. *See Ambassador,* 1984-NMSC-107, ¶ 12, 102 N.M. 28, 31 (". . . negligence becomes an *element* tending to prove bad faith, but not a cause of action in and of itself").

The *Ambassador* case is therefore applicable to this case in its reasoning, if not its facts.

B.  <u>Plaintiffs Have Not Supported Their Position With Caselaw</u>

Plaintiffs contend that *Ambassador* is distinguishable and inapplicable (a contention with which this Court disagrees), yet they present no case law to support their position that negligence claims can be asserted against an insurer separate from a statutory or bad faith claim.  They do offer one case, *Charter Serv. v. Principal Mut. Life Ins. Co.*, where the New Mexico Court of Appeals recognized that negligent misrepresentation claims can be asserted against an insurer. 1994-NMCA-007, 117 N.M. 82,   *Charter* does not assist Plaintiffs at all, because Plaintiffs are not alleging negligent misrepresentation by Liberty—they are asserting instead a simple garden-

variety negligence claim.[3] Moreover, *Charter's* language is not inconsistent with *Ambassador*'s finding that the element of negligence is subsumed within statutory and bad faith claims. *Charter*, 1994-NMCA-007, ¶ 10, 117 N.M. 82, 86 ("Negligent misrepresentation is an action governed by the general principles of the law of negligence.").

Plaintiffs have not presented a reason to discount *Ambassador,* nor have they provided any legal basis to allow their negligence claim to proceed. *See also Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 753 F.2d 824, 826 (10th Cir. 1985) (holding, after certifying questions to the New Mexico Supreme Court, that district court correctly concluded that New Mexico does not recognize a cause of action for negligent failure to settle and citing to New Mexico cases "referring to the duty between insurer and insured as one of good faith").[4] Negligence is element of the bad faith and statutory claims asserted by Plaintiffs but cannot be maintained as a separate and independent claim in this lawsuit. Accordingly, Plaintiffs' negligence claim in Count IV will be dismissed as not legally supportable.

**CONCLUSION**

In sum, the Court finds and concludes that disputes of material fact exist on Plaintiffs' claims brought under the New Mexico Unfair Practices Act, NMSA 1978 §§57-12-16 and the New Mexico Unfair Insurance Practices Act, NMSA 1978 59A-16-20 (Counts II and III). Therefore, Defendant is not entitled to summary judgment on these claims.

---

[3] Count IV asserts the black-letter elements of a simple negligence claim: (1) that Liberty "breached the standard of care required of an insurance company investigating and handling claims for insurance coverage in New Mexico; and that (2) the alleged negligence caused damages to Plaintiffs. While the negligence claim cannot stand alone, the allegations in Count IV back up Plaintiffs' claims based on a failure to investigate and bad faith claim against Liberty. The Court's conclusion here is supported by the holdings in both *Ambassador* and *Charter.* See Doc. 1-3 (First Am. Compl.) at 24, ¶¶65-68.

[4] This Tenth Circuit decision is an appeal from a separate *Ambassador* lawsuit.

However, Defendant is entitled to summary judgment on the negligence claim asserted in Count IV because the Court finds that it is legally not supportable under New Mexico law.

Except for Plaintiffs' negligence claim, which shall be dismissed, the Court has found that material issues of fact exist on every one of the claims asserted by Plaintiffs in this case. *See* Docs. 99, 100, 101. This case shall therefore proceed to trial on Counts I, II and III.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment on Plaintiffs' Statutory Claims and Negligence (Counts II, III and IV) **(Doc. 68)** is therefore DENIED as to the claims asserted under the New Mexico Unfair Practices Act and the New Mexico Unfair Insurance Practices Act in Counts II and III; and GRANTED with regard to the negligence claim asserted in Count IV.

_____
CHIEF UNITED STATES DISTRICT JUDGE